1  K. MICHELLE GRAJALES
   mgrajales@ftc.gov
2  LISA ANNE ROTHFARB
3  lrothfarb@ftc.gov
   FEDERAL TRADE COMMISSION
4  600 Pennsylvania Ave., NW
5  Mail Stop: CC-10232
   Washington, DC 20580
6  (202) 326-3172
7
8  JOHN D. JACOBS, Cal. Bar No. 134154
   jjacobs@ftc.gov
9  FEDERAL TRADE COMMISSION
10 10990 Wilshire Blvd., Ste. 400
   Los Angeles, CA 90024
11 Tel: (310) 824-4343; Fax: (310) 824-4380
12 Attorneys for Plaintiff

**FILED**
CLERK, U.S. DISTRICT COURT

October 17, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___VPC___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. CV17-07044-SJO (JCX) |
| Plaintiff, | **STIPULATED PRELIMINARY INJUNCTION AS TO DEFENDANT BLOOM LAW GROUP, P.C.** |
| vs. | |
| A1 DOCPREP INC., et al., | |
| Defendants. | |

Plaintiff, the Federal Trade Commission, commenced this civil action on September 25, 2017, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Telemarketing and Consumer Fraud and

Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"). On motion by the FTC, on September 28, 2017, this Court entered an *ex parte* Temporary Restraining Order ("TRO") with asset freeze, appointment of a receiver, and other equitable relief against the Defendants. The FTC and Defendant Bloom Law Group P.C. ("Stipulating Defendant"), by and through their Counsel, have stipulated and agreed to the entry of a preliminary injunction ("Order").

THEREFORE IT IS ORDERED as follows:

### FINDINGS OF FACT

By stipulation of the parties, the Court finds as follows:

1. The FTC and Stipulating Defendant have stipulated and agreed to the entry of this preliminary injunction order without any admission of wrongdoing or violation of law, and without a finding by the Court of law or fact other than stated below.

2. Stipulating Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order.

3. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over the parties.

4. Venue in this district is proper.

5. The activities of Stipulating Defendant are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.     The FTC asserts that there is good cause to believe that the FTC will ultimately succeed in establishing that Bloom Law Group has engaged in and is likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Mortgage Assistance Relief Services Rule ("MARS Rule" or "Regulation O"), 12 C.F.R. Part 1015, formerly codified as 16 C.F.R. Part 322, and therefore there is good cause to believe the FTC is likely to prevail on the merits of this action.

7.     The FTC asserts that there is good cause to believe that consumers will suffer continuing harm unless Stipulating Defendant is restrained and enjoined by order of this Court.

8.     The FTC asserts that there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers—including monetary restitution, rescission, disgorgement, or refunds—will occur from the sale, transfer, destruction or other disposition or concealment by Stipulating Defendant of its assets or records, unless Stipulating Defendant is immediately restrained and enjoined by order of this Court.

9.     The FTC asserts that good cause exists for continuing the receivership over the Receivership Entities and continuing the asset freeze imposed pursuant to the TRO issued in this case.

10.     The FTC asserts that entry of this order is in the public interest;

11.     Plaintiff FTC is an independent agency of the United States and no security is required of any agency of the United States for issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).

## **DEFINITIONS**

For the purpose of this Preliminary Injunction, the following definitions shall apply:

A.     "**Asset**" or "**Assets**" means any legal or equitable interest in, right to,

or claim to, any real or personal property, including "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

B. "**Assisting Others**" includes: (a) providing administrative services, including filing business registrations with federal, state, or local government entities, establishing bank or merchant accounts, and/or handling banking transactions; (b) acting as an officer, director, or registered agent of a business entity; (c) establishing mail accounts or mail receiving boxes, and/or providing mailing or printing services; (d) performing customer service functions, including forwarding mail received from consumers and/or receiving or responding to consumer complaints; (e) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (f) providing names of, or assisting in the generation of, potential customers; and (g) performing or providing marketing or billing services of any kind, including performing or providing telemarketing services.

C. "**Commercial communication**" means any written or oral statement, illustration, or depiction, whether in English or any other language, that is designed to affect a sale or create interest in purchasing any service, plan, or program, whether it appears on or in a label, package, package insert, radio, television, cable television, brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, film, slide, audio program transmitted over a telephone system, telemarketing script, onhold sript, upsell script, training materials provided to telemarketing firms, program-length commercial ("infomercial"), the Internet, cellular network, or any other medium. Promotional

materials and items and Web pages are included in the term "commercial communication."

D. "**Consumer-specific commercial communication**" means a commercial communication that occurs prior to a consumer agreeing to permit the provider to seek offers of mortgage assistance relief on behalf of the consumer, or otherwise agreeing to use the mortgage assistance relief service, and that is directed at a specific consumer.

E. "**Corporate Defendants**" means A1 DocPrep Inc., Stream Lined Marketing, also doing business as Project Uplift Students and Project Uplift America, and Bloom Law Group P.C., also doing business as Home Shield Network and Keep Your Home USA, and each of their subsidiaries, affiliates, successors, and assigns.

F. "**Debt relief service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

G. "**Defendant(s)**" means Corporate Defendants and Holman Ardalan, individually, collectively, or in any combination.

H. "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other

electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

I. **"Electronic data host"** means any person in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

J. **"Established Business Relationship"** means a relationship between a Seller and a person based on: (a) the person's purchase, rental, or lease of the Seller's good or services or a financial transaction between the Seller and person, within the eighteen months immediately preceding the date of the Telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the Seller, within the three months immediately preceding the date of a Telemarketing call.

K. **"Financial institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

L. **"General commercial communication"** means a commercial communication that occurs prior to the consumer agreeing to permit the provider to seek offers of mortgage assistance relief on behalf of the consumer, or otherwise agreeing to use the mortgage assistance relief service, and that is not directed at a specific consumer.

M. **"Individual Defendant"** means Holman Ardalan, by whatever names he may be known.

N. **"Mortgage assistance relief service"** or **"MARS"** means any

product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

    1.     stopping, preventing, or postponing any mortgage or deed of foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

    2.     negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal, balance, monthly payments, or fees;

    3.     obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

    4.     negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

    5.     obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

    6.     negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a consumer's mortgage or home loan application.

    O.    **"National Do Not Call Registry"** means the "do-not-call" registry of

telephone numbers maintained by the Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

P.    **"Outbound Telephone Call"** means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

Q.    **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

R.    **"Receiver"** means the receiver appointed in Section XIV of this Order and any deputy receivers that shall be named by the receiver.

S.    **"Receivership entities"** means the Corporate Defendants, as well as any other business related to Defendants' debt relief, MARS, or tax debt relief business and which the Receiver has reason to believe is owned or controlled in whole or in part by any of the Defendants.

T.    **"Seller"** means any person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

U.    **"Stipulating Defendant"** means Bloom Law Group, PC, also doing business as Home Shield Network and Keep Your Home USA, and each of its subsidiaries, affiliates, successors, and assigns.

V.    **"Tax relief product or service"** means any product, service, plan, or program, represented, expressly or by implication, to negotiate, settle, or alter the terms of a tax obligation between a person and a taxing entity.

W.    **"Telemarketer"** means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc).

X.    **"Telemarketing"** means a plan, program, or campaign (whether or not covered by the TSR, 16 C.F.R. Part 310) that is conducted to induce the

purchase of goods or services or a charitable contribution by use of one or more telephones.

**I.** **PROHIBITION ON DECEPTIVE REPRESENTATIONS**

**IT IS THEREFORE ORDERED** that Stipulating Defendant, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any MARS, debt relief service, or tax relief product or service, is preliminarily restrained and enjoined from:

    A.    misrepresenting or assisting others in misrepresenting, expressly or by implication:

        1.    that Stipulating Defendant is part of or affiliated with the federal government or a federal government program;

        2.    that consumers who enroll in Stipulating Defendant's debt relief services will have their monthly payments reduced or their loan balances forgiven in whole or in part;

        3.    that consumers who enroll in Stipulating Defendant's MARS will obtain a loan modification that will make their payments substantially more affordable or help them avoid foreclosure;

        4.    any other fact material to consumers concerning any MARS or debt relief service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics; and

    B.    making or assisting others in making, any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading and, at the time such representation is made, Stipulating Defendant possesses and relies upon

competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## II.  PROHIBITION ON COLLECTION OF ADVANCE FEES

**IT IS FURTHER ORDERED** that Stipulating Defendant, and its officers, agents, employees, and those persons or entities in active concert or participation with with any of them, who receive actual notice of this Order, whether acting directly or indirectly, is hereby restrained and enjoined from:

A.     In connection with providing, offering to provide, or arranging for others to provide any MARS, requesting or receiving payment of any fee or other consideration for any MARS before the consumer has executed a written agreement with the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief that a Defendant obtained from the consumer's dwelling loan holder or servicer on the consumer's behalf; and

B.     providing, offering to provide, or arranging for others to provide any debt relief service and requesting or receiving payment of any fees or consideration for any debt relief service, until and unless:

1.     the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

2.     the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

3. to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

    a. bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

    b. is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

## III. DISCLOSURES REQUIRED BY THE MARS RULE

**IT IS FURTHER ORDERED** that Stipulating Defendant and its officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them Defendant who receive actual notice of this Order, whether acting directly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS, is hereby preliminarily restrained and enjoined from engaging in the following conduct:

A. Failing to disclose the following information in all general commercial communications:

    1. "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender;" and

2. "Even if you accept this offer and use our service, your lender may not agree to change your loan;"

B. Failing to disclose the following information in all consumer-specific commercial communications:

1. "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services." For the purposes of this section, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the MARS that are the subject of the sales offer, including but not limited to, all fees and charges;

2. "[Name of company] is not associated with the government, and our service is not approved by the government or your lender;"

3. "Even if you accept this offer and use our service, your lender may not agree to change your loan;" and

4. "If you stop paying your mortgage, you could lose your home and damage your credit."

## IV. PROHIBITION AGAINST UNLAWFUL TELEMARKETING PRACTICES

**IT IS FURTHER ORDERED** that Stipulating Defendant and its officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order, whether acting directly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any good or service, is hereby preliminarily restrained

and enjoined from engaging in any of the following practices:

A. Initiating or causing others to initiate any outbound telephone call to any person at a telephone number on the National Do Not Call Registry, unless:

1. Stipulating Defendant has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of Stipulating Defendant may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or

2. Stipulating Defendant has an established business relationship with such person, and that person has not previously stated that he or she does not wish to receive outbound telephone calls made by or on behalf of Stipulating Defendant;

B. Initiating or causing others to initiate any outbound telephone call to a telephone number within a given area code when the annual fee for access to the telephone numbers within that area code that are on the National Do Not Call Registry has not been paid by or on behalf of Stipulating Defendant, unless the telephone call is:

1. A solicitation to induce charitable contributions;

2. To a business;

3. To persons who have given the Seller their express agreement, in writing and signed, to receive calls from Stipulating Defendant; or

4. To persons who have an Established Business Relationship with Stipulating Defendant.

## V. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Stipulating Defendant, its officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, is hereby preliminarily restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B. Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

*Provided, however,* that Stipulating Defendant may disclose such identifying information to a law enforcement agency, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VI. ASSET FREEZE

**IT IS FURTHER ORDERED** that Stipulating Defendant and its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise

disposing of any Assets, wherever located, including outside the United States, that are:

1.  owned or controlled, directly or indirectly, by any Defendant, including, but not limited to those for which a Defendant is a signatory on the account;

2.  held, in part or in whole, for the benefit of any Defendant;

3.  in the actual or constructive possession of any Defendant; or

4.  owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant, including any Assets that are held by or for any Defendant in any account at any Financial Institution, whether within or without the territorial United States, or with any credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, mail holding or forwarding company, credit union, retirement fund custodian, money market or mutual fund, or storage company;

B.  Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C.  Incurring charges or cash advances on any credit or bank card issued in the name, individually or jointly, of any Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account

for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

   D. Cashing any checks or depositing or processing any payments from consumers, clients, or customers of any Defendant.

   E. Incurring liens or encumbrances on real property, personal property, or other Assets in the name, singly or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

   The Assets affected by this Section shall include:  (1) all Assets of Stipulating Defendant as of the time this Order is entered; (2) Assets obtained by Stipulating Defendant after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order.  This Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order.

## VII. <u>DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES</u>

   **IT IS FURTHER ORDERED** that any Financial Institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) and that (a) holds, controls, or maintains custody, through an account or otherwise, of any Document or Asset that is:  owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; (b) holds, controls, or maintains custody of any Document or Asset associated with credits, debits or charges made on behalf of any Defendant,

including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or (c) has held, controlled, or maintained custody of any such Document, Asset, or account at any time since the date of entry of this Order shall:

A. Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;

B. Deny any Person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C. To the extent not already done so pursuant to the TRO, provide Plaintiff's counsel and the Receiver, within three (3) business days of receiving a copy of this Order, a sworn statement setting forth:

      1. The identification number of each such account or Asset;

      2. The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person to whom such account or other Asset was remitted; and

      3. The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

## VIII.  FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Defendant, to the extent each has not done so pursuant to the TRO, within three (3) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver (1) completed financial statements on the forms attached to the TRO as **Attachment A** (Financial Statement of Corporate Defendant) for each Corporate Defendant and (2) a completed statement, verified under oath, of all payments, transfers or assignments of funds, assets, or property worth $1,000 or more since January 1, 2015.  Such statement shall include: (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the transfer or assignment; and (d) the type and amount of consideration paid by the Defendant.  Each statement shall specify the name and address of each financial institution and brokerage firm at which the Defendant has accounts or safe deposit boxes.  Said statements shall include assets held in foreign as well as domestic accounts.

## IX.    FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO, within five (5) days following the service of this Order, each Defendant shall:

A.      Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets,

Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Take all steps necessary to provide Plaintiff's counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment B** and providing it to Plaintiff's counsel.

C.    Transfer to the territory of the United States and deliver to the Receiver all Documents and Assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.    The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## X.    NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Stipulating Defendant, its officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or

dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A.    Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Stipulating Defendant's Assets have been fully repatriated pursuant to this Order; or

B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Stipulating Defendant's Assets have been fully repatriated pursuant to this Order.

## XI.    CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning any Stipulating Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## XII.    PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Stipulating Defendant, and its officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.    Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to:  (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3)

the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.     Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Stipulating Defendant's incomes, disbursements, transactions, and use of Stipulating Defendant's Assets.

## XIII.     REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Stipulating Defendant, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XIV.  CONTINUATION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that Robb Evans & Associates, LLC shall continue to serve as Receiver for the business activities of the Receivership Entities with the full power of an equity receiver.  The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with any laws and Local Rules of this Court governing receivers.

## XV.   DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.     Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any of the Receivership Entities from control of, management of, or participation in, the affairs of the Receivership Entities;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated;

C.     Obtain, conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive, all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Corporate Defendants. *Provided, however,* that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

D.     Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall: divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all

such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely;

E.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

F.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Corporate Defendants, such as rental payments;

G.     Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities.  Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and

necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

H.   Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

I.   Enter into and cancel contracts and purchase insurance as advisable or necessary;

J.   Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

K.   Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

L.   Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

M.   Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate;

N.   Open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and

disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

O. Maintain accurate records of all receipts and expenditures incurred as Receiver;

P. Allow the Plaintiff's representatives, agents, and assistants, as well as Stipulating Defendant's representatives and Stipulating Defendant itself, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

Q. Allow the Plaintiff's representatives, agents, and assistants, as well as Stipulating Defendant and its representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

R. Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

S. Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

T. Take all steps necessary to ensure that any of the Corporate Defendants' web pages or websites relating to debt relief or MARS cannot be accessed by the public, or are modified for consumer education and/or informational purposes, if the Receiver deems it necessary or advisable;

U. Take all steps necessary to ensure that any telephone numbers associated with the Corporate Defendants cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations, if the Receiver deems it necessary or advisable; and

V.     File timely reports with the Court at reasonable intervals, or as otherwise directed by the Court.

**XVI.     <u>TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER</u>**

**IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO, Stipulating Defendant and any other person with possession, custody, or control of property of, or records relating to, the Corporate Defendants shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Corporate Defendants and immediately transfer or deliver to the Receiver possession, custody, and control of the following:

A.     All Assets held by or for the benefit of the Corporate Defendants;

B.     All Documents of or pertaining to the Corporate Defendants;

C.     All computers, electronic devices, mobile devices and machines used to conduct the business of the Corporate Defendants;

D.     All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Corporate Defendants; and

E.     All keys, codes, user names and passwords necessary to gain access or to secure access to any Assets or Documents of or pertaining to the Corporate Defendants, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XVII. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO, Stipulating Defendant shall immediately provide to the Receiver:

A.     A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person other than a Receivership Entity; and

B.     A list of all agents, employees, officers, attorneys, and servants of the Receivership Entities, and those persons in active concert and participation with the Receivership Entities, or who have been associated with or done business with the Receivership Entities.

## XVIII. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Stipulating Defendant, its officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property or of records relating to the Corporate Defendants who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, or machines (onsite or remotely) or any cloud account (including the specific method used to access the account) or electronic file in any medium; advising all persons who owe money to any Corporate Defendant that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Corporate Defendants.

# XIX. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Stipulating Defendant, its officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A. Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B. Transacting any of the business of the Corporate Defendants;

C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Corporate Defendants; or

D. Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

# XX. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Stipulating Defendant, its officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and its corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Corporate Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Corporate Defendants, including, but not limited to:

A. Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Corporate Defendants;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Corporate Defendants, including the issuance or employment of process against the Corporate Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C. Filing or enforcing any lien on any Asset of the Corporate Defendants, taking or attempting to take possession, custody, or control of any Asset of the Corporate Defendants, attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Corporate Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

*Provided, however,* that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXI. **COMPENSATION OF RECEIVER**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Corporate Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after

the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXII. **RECEIVER'S BOND**

**IT IS FURTHER ORDERED** that the bond in the sum of $15,000 previously filed by the Receiver with the Clerk of this Court shall remain in effect, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

## XXIII. **DISTRIBUTION OF ORDER BY STIPULATING DEFENDANT**

**IT IS FURTHER ORDERED** that Stipulating Defendant shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, attorney, spouse, former spouse, subsidiary, division, and representative of Stipulating Defendant and any company owned or controlled by Stipulating Defendant, and shall, to the extent no already done so pursuant to the TRO, within three (3) calendar days from the date of entry of this Order provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person who received a copy of the Order. Furthermore, Stipulating Defendant shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXIV. **LIMITED EXPEDITED DISCOVERY**

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(c), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiff and the Receiver are granted leave, from any time after service of this Order until a Rule 16 (b) scheduling order is issued, to conduct limited

expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Stipulating Defendants' Assets; (2) the location of Stipulating Defendants' documents; or (3) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Plaintiff and the Receiver may take the deposition of parties and non-parties. Forty-eight (48) hours' notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means;

B. Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, *provided, however*, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored in an electronic format.

C. Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after service of such interrogatories;

D. Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E. Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Fed. R. Civ. P. 26(d) & (f).

## XXV. <u>SERVICE OF THIS ORDER</u>

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon Stipulating Defendant or any Person (including any financial institution) that may have possession, custody, or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Fed. R. Civ. P. 65(d)(2). For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXVI. <u>CORRESPONDENCE AND SERVICE ON PLAINTIFF</u>

**IT IS FURTHER ORDERED** that, for the purpose of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent by (1) email at mgrajales@ftc.gov and lrothfarb@ftc.gov; and (2) facsimile transmission to (202) 326-3768, or by hand delivery or overnight shipment via third-party carrier to the offices of:

> K. Michelle Grajales
> Federal Trade Commission
> 600 Pennsylvania Ave., NW, CC-10232
> Washington, DC 20580

## XXVII. <u>DURATION OF THE ORDER</u>

**IT IS FURTHER ORDERED** that this Order shall expire upon entry of a final judgment in this case.

## XXVIII.　　**RETENTION OF JURISDICTION**

　　**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

　　The Stipulation obviates the need for hearing on Plaintiff's Motion to Show Cause Why a Preliminary Injunction Should Not Issue.  The Court therefore **VACATES** the hearing scheduled for October 18, 2017.

SO ORDERED:

Dated: October 17, 2017 @ 1:00 p.m. _____

　　　　　　　　　　　　　　　HON. S. JAMES OTERO

　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE